[For proceedings on demurrers to a bill to set aside certain legacies contained in this will, see Case No. 10,190.]

---

## Case No. 10,190.

### NEWTON et al. v. CARBERY.

[5 Cranch, C. C. 632.] [1]

Circuit Court, District of Columbia. March Term, 1840.

WILLS — CONSTRUCTION — MARYLAND BILL OF RIGHTS—LEGACY IN AID OF CHURCH—CHARTER TO CERTAIN PERSONS—PRESUMPTIONS—FAILURE TO ACT UNDER IT.

1. A legacy to, or for the use or support of a minister of the gospel as such; or to, or for the use or support of a religious sect. order, or denomination, is void, by the bill of rights of Maryland.

2. A devise to go in aid of a new Catholic church. then building in Georgetown, is void for uncertainty, as well as by the bill of rights.

3. A charter granted to certain persons therein named, is to be presumed. primâ facie, to have been granted at their instance, and to have been accepted by them; but such presumption is rebutted by evidence that no proceedings were ever had under the charter, although seven years had elapsed since its date.

This was a bill in equity [by Newton and others, next of kin and heirs of Eloysa Mattingly against Lewis Carbery, executor of said Eloysa Mattingly] to set aside certain legacies in the will of Mrs. Mattingly, and for a distribution thereof among her next of kin. The defendant demurred to the bill as to all the legacies therein sought to be vacated, except the legacy of one half of the residue to "the Georgetown Free School and Orphan Asylum;" as to which he answered, affirming the existence of the school as a corporate body. This demurrer and answer were admitted to be filed for the purpose of taking the opinion of the court. as to the validity of the legacies to the priests, &c., with leave to amend the bill and answer, &c.

The testatrix, after bequeathing sundry

[1] [Reported by Hon. William Cranch, Chief Judge.]

small legacies to her next of kin and heirs at law, says: "1. I will that my executor pay to the Rev. William McSherry, president of Georgetown College, one hundred dollars, to be distributed equally among the clergy of the said college, for the purpose of having masses offered up for the repose of my soul. 2. I will that my sideboard be given to the Rev. Mr. Lucas, pastor of Trinity Church, for the use of said church. 3. I will to the pastor of the Catholic Church at Newton, in St. Mary's county, ten dollars; one half to go to the poor of that congregation, and the other for masses for me. 4. I will that my executor pay to the Archbishop of Baltimore, ten dollars. 5. To Bishop Benjamin Fenwick, of Boston, ten dollars. 6. To the two pastors of Trinity Church, of this place, ten dollars each. 7. To the Rev. S. L. Dubuisson, ten dollars. 8. To the Rev. William Matthews, ten dollars. 9. To the Rev. Mr. Donelson, of the city of Washington, ten dollars, to go in aid of the new Catholic church, now building in said city. 10. To the Rev. John McElroy, ten dollars. 11. To the Rev. Mr. Detheux, of Missouri, ten dollars. 12. To the Rev. Joseph Carbery, of St. Mary's county, ten dollars. 13. To the Rev. Mr. Mudd, ten dollars. 14. To the Rev. Mr. N. Coombs, ten dollars. 15. To the Sisters of Visitation of Georgetown, District of Columbia, ten dollars. 16. To the Carmelite Nuns of Baltimore, ten dollars. 17. To the Catholic Bishop of Ohio, ten dollars. 18. To the Convent of Dominicans, in Bardstown, Kentucky, ten dollars. 19. To the pastors of Trinity Church, in this place, for the use of the poor of that congregation, ten dollars. 20. To the Sisters of Charity, of St. Vincent's Asylum, in Washington City, ten dollars. 21. To the pastor of St. Joseph's church, St. Mary's county, twenty dollars; one half for the poor of that congregation, and the other half for the use of that church. 22. To the pastor of St. Aloysius' Church, of said county, twenty dollars; one half for the use of the poor of that congregation, the other half for the use of that church. 23. I will to the pastor of St. Joseph's Church aforesaid, and to his successors, the vestments, chalice, and mass-book, which I own in that county, for the use of that church. 24. I will and bequeathe that my negro woman Matilda Gordon, and her child Mary Ann Elizabeth, shall be free at my death. 25. And finally, I will and bequeathe, that after all the aforenamed legacies and bequests shall have been paid, and all necessary expenses in settling up my estate, including commission and all other legal charges, the remainder of my estate shall be applied as follows, to the two following objects, to wit: one half of said remaining part, to go in aid of the erection of a new Catholic church in Georgetown; the amount for that object to be put out at interest, or laid out in some safe stock bearing interest, as my executor shall think best, until said church shall have been begun; the

other half to go as an endowment, in aid of the Georgetown Free School and Orphan Asylum, heretofore kept near Trinity Church, which, for want of funds, has, for a time past, laid in a state of inactivity. It is my desire, that the said school, having a charter conferring many benefits and rights, as it has, shall be continued and encouraged, and that its influence and effects in doing good by the educating of poor children, and doing all other things as was intended by its charter, should be done, shall be placed upon a permanent footing, and be a blessing, as it should be, to the children admitted into it, a comfort to their parents, and an honor; and a means of sanctifying grace to those who may conduct it. It is my desire and will that the house and lot I now occupy may be either sold or kept, as my executor may think best, as it will fall, probably, within the distribution to be applied to the last two objects named in my will; namely, the building a new church in Georgetown, and the Georgetown Free School and Orphan Asylum."

W. L. Brent and Mr. Marbury, for plaintiffs.

Mr. Bradley, for defendant.

The counsel for plaintiffs cited the bill of rights of Maryland, § 34; the act of congress of March 2, 1833 [6 Stat. 538], incorporating the Georgetown Free School and Orphan Asylum; Dashiell v. Attorney General, 5 Har. & J. 392; and Barnes v. Barnes, in this court, at December term, 1827 [Case No. 1,014].

The counsel for defendant cited 1 Kent, Comm. 286, 312.

[For proceedings on appeal from the orphans' court for the county of Washington, which overruled a caveat, and admitted the will to probate, see Case No. 10,189.]

Before CRANCH, Chief Judge, and MORSELL and THRUSTON, Circuit Judges.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, dissenting). By the declaration of rights, prefixed to the constitution of Maryland, and which was a part of the laws of that state on the 27th of February, 1801, when they were adopted and continued in force in this county, by the act of congress of that date [2 Stat. 103], it is declared in section 34: "That every gift, sale, or devise of lands, to any minister, public teacher, or preacher of the gospel, as such; or to any religious sect, order, or denomination; or to, or for the support, use, or benefit of, or in trust for, any minister, public teacher, or preacher of the gospel, as such; or any religious sect, order, or denomination; and every gift or sale of goods or chattels to go in succession, or to take place after the death of the seller or donor, to or for such support, use, or benefit; and also every devise of goods or chattels to or for the support, use, or benefit of any minister, public teacher,

or preacher of the gospel, as such; or any religious sect, order, or, denomination, without the leave of the legislature, shall be void; except always any sale, gift, lease, or devise, of any quantity of land, not exceeding two acres, for a church, meeting, or other house of worship, and for a burying-ground, which shall be improved, enjoyed, or used only for such purpose; or such sale, gift, lease, or devise, shall be void." Under this declaration of rights, it is admitted, in argument, that the legacies numbered 2, 3, 4, 6, 9, 17, 19, 21, 22, and 23, are void, as being made either to some minister of the gospel, as such, or to, or for the use or benefit of some religious sect, order, or denomination, without the leave of the legislature. The legislature, however, is presumed to give leave to the donor to make the gift, when it permits the donee to accept and hold it.

The Sisters of the Visitation of Georgetown, and the Sisters of Charity of St. Vincent's Asylum, in Washington, it is understood, have been incorporated, with powers to take and hold property by devise or bequest, The legacies, therefore, Nos. 15 and 20, are not within the prohibition of the declaration of rights.

We have no evidence that the Carmelite Nuns of Baltimore, or the Convent of Dominicans in Bardstown, in Kentucky, have been incorporated with like powers. The legacies, therefore, Nos. 16 and 18, must be considered as within that prohibition, and, therefore, void.

The legacies Nos. 5, 7, 8, 10, 11, 12, 13, and 14, being bequeathed to the several legatees personally by name, and not to them as ministers, are not within the prohibition of the declaration of rights, and are valid. One of the remaining disputed legacies is No. 1, of one hundred dollars to the Rev. William McSherry, president of Georgetown College, to be distributed equally among the clergy of said college, for the purpose of having masses offered up for the repose of the soul of the testatrix. This is substantially a bequest to "the clergymen of the college," not by name, but as clergymen; for it was only in that character that they could offer up the sacrifice upon the altar, which the mass is supposed to be.

Another of the remaining disputed legacies is, of one half of the residue of the estate "to go in aid of a new Catholic church in Georgetown." This legacy is disputed upon two grounds: 1. Because it is prohibited by the declaration of rights; and 2. Because it is uncertain who is to claim it. We think it void upon one of those grounds, if not upon both. It was intended for the use of a religious sect, order, or denomination; and if the legatee were sufficiently described, it would still be void under the declaration of rights. But the legatee is not sufficiently certain, and therefore, also, it is void.

The remaining disputed legacy is, that the other half of the residue of the estate is "to go as an endowment in aid of the Georgetown Free School and Orphan Asylum," which was incorporated by the act of congress of the 2d of March, 1833, c. 87 (6 Stat. 538), whereby the corporation is authorized to purchase, take, and receive, any lands, or other property, which should thereafter be given, granted, sold, bequeathed, or devised to them, within a certain limit. The corporation was to consist of the persons named in the charter and their successors in office; and vacancies were to be filled from time to time, "according to the mode to be described in the by-laws," which by-laws were to be made by the corporation. They were authorized to appoint and remove all necessary officers, and to prescribe their duties, and regulate their compensation. The annual contributors were to meet in June in every year, and elect nine female managers, whose duties were to be regulated by the by-laws which were to be made by the corporation; but the meetings of the contributors, and the election of the female board of managers, were not necessary to the existence of the corporation, which was to consist of the board of trustees alone. It is, however, contended that the corporation never existed, because the charter never was accepted. It is admitted, in argument, that the persons named in the charter were previously trustees of a school in Georgetown, called "The Georgetown Free School." The presumption, from that fact, is, that the charter was granted at their instance; and the presumption, also, is, that a charter is accepted by those who have applied for it, unless, from the terms of the charter itself, it appears, that some act of acceptance is to be done, to give validity or perfection to the act of incorporation. By the present charter no such act was required. The burden of proof, therefore, rests upon the plaintiffs to rebut these presumptions. In order to do this, they show the minute-book of the proceedings of the board of trustees of the old school, (which existed before the date of the charter,) continued on for four years after that date, that is, until 1837, when their meetings were discontinued. In the minutes of those proceedings, nothing is said of the charter, nor of the asylum, nor of any meeting of the contributors, nor of an election of a board of female managers, nor of any by-law regulating the duties of that board of managers; or prescribing the mode of filling vacancies in the board of trustees. Seven years have elapsed since the date of the charter, and nothing appears to have been done to organize the school and asylum under the act of incorporation.

These circumstances seem to us sufficient to rebut the primâ facie presumption of acceptance, and we must say, that there is not sufficient evidence that the charter was ever accepted, and consequently, that the corporation does not exist, and did not at the death of the testatrix. We think, therefore, that this residuary bequest is also void.

The consequence of this opinion, if correct, will be, that these void legacies will fall into the intestate residuum, to be distributed among the next of kin, according to the statute of distribution.

MORSELL, Circuit Judge, concurred. THRUSTON, Circuit Judge, dissented, and delivered an oral opinion.